### IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | |
|---|---|
| Senator Alicia "Chucky" Hansen,<br><br>          Plaintiff,<br><br>v.<br><br>CAROLINE FAWKES, in her Individual Capacity, and in her Capacity as Supervisor of Elections for the U.S.V.I., and the JOINT V.I. BOARD OF ELECTIONS,<br><br>          Defendants. | Civ. No.<br><br><br>**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUCTION, PERMANENT INJUNCTION, AND DECLARATORY RELIEF,** |

### PLAINTIFF'S COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTARING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DECLARATORY RELIEF

**I.      Introduction, Jurisdiction and Parties, including Summary of Issues and Summary of Injunctive and Declaratory Relief Sought**

1.      Plaintiff Senator Alicia "Chucky" Hansen ("Plaintiff" or "Hansen" or "Senator Hansen" has been selected by a group of lawfully registered voters and residents of St. Croix, U.S. Virgin Islands to be their political standard bearer in the upcoming election. These voters will be unlawfully disenfranchised of their vote and the right to select the standard bearer of their choice if the Court does not act immediately.  A true and correct copy of Senator Hansen's current election petition, filed September 4, 2014, is attached hereto as **Exhibit A**. Senator Hansen is a current, sitting, ten-term member of the V.I. Legislature serving the people of St.

**LEE J. ROHN AND ASSOCIATES, LLC**
1101 King Street
Christiansted
VI 00820-4933
Tel:  340.778.8855
Fax: 340.773.2954
lee@rohnlaw.com

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 2

Croix.[1]  Senator Hansen had been certified to be on the ballot for re-election for the November 4, 2014 election.[2]  Senator Hansen has been elected and has served as a member of the Legislature since after she was convicted on three counts of misdemeanor failure to file tax returns over five years ago.  Senator Hansen did not have her voting rights suspended as part of her conviction.

2.      Defendant Caroline F. Fawkes ("Fawkes") is the St. Croix Supervisor of Elections.  *See, e.g.*, 18 V.I.C. § 4.  Defendant Virgin Islands Joint Election Board is an executive agency with some responsibility for administering local elections ("Joint Election Board").  *See* 18 V.I.C. §§ 47 & 48.  On May 14, 2014, Fawkes notified a voter who objected to Hansen's certification for election, Adelbert M. Bryan (who is also an individual St. Croix Election Board member), in writing, that she had "completed the Examination of Nomination papers of Senator Alicia Senator Hansen pursuant to VIC Title 18, Chapter 17, § 411 and our internal checklist."  "I have determined that she meets the qualifications established by law for public office as a senator."  Fawkes did so after requesting a legal opinion from the Attorney General's Office on Senator Hansen's eligibility to serve as a member of the legislature.

3.      The ROA, 48 U.S.C. §§ 1541 *et seq*., is a federal statute passed by the U.S. Congress that "serves as the Constitution of the Virgin Islands."  *See Kendall v. Russell*, 572 F.3d 126, 135-36 (3d Cir. 2008); *Brow v. Farrelly*, 994 F.2d 1027, 1032 (3d Cir. 1993).  On August 28, 2014, the Virgin Islands Supreme Court issued a Memorandum Opinion, which declared that Senator Hansen was not qualified to sit as a member of the Virgin Islands Legislature under § 6(b) of the Revised Organic Act based on her previous conviction, and

---

[1] http://en.wikipedia.org/wiki/Legislature_of_the_Virgin_Islands.

[2] http://www.vivote.gov/sites/default/files/FINAL%20(STX)%20Listing%20of%20Candidates%20(Election%202014)%207%2017%2014.pdf.

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 3

remanded the case so that the Superior Court could "set aside the nomination papers of Alicia "Chucky" Hansen.  A true and correct copy of the V.I. Supreme Court's Memorandum Opinion, Judgment, and Mandate, is attached hereto as **Exhibit B**, **Exhibit C**, and **Exhibit D**.  Senator Hansen argued in that proceeding that the courts of the Virgin Islands lacked jurisdiction to issue such an order in direct violation of the limitations Congress placed on the authority of the Virgin Islands Supreme Court under Section 6(g) of the Revised Organic Act that, "[t]he legislature shall be the *sole judge* of the *elections* and *qualifications of its members*, shall have and exercise all the authority and attributes, inherent in legislative assemblies, and shall have the power to institute and conduct investigations, issue subpoena to witnesses and other parties concerned, and administer oaths," *see* 48 U.S.C. § 1572(g), and that her conviction was not a crime of moral turpitude as a matter of federal law under ROA § 6(b).

4.      On August 29, 2014, Superior Court Judge Douglas A. Brady issued an order to Fawkes, that, "the Supervisor of Elections shall set aside the nomination Papers of Alicia 'Chucky' Hansen, and remove the name of Alicia 'Chucky' Hansen from the general election ballot."[3]  A true and correct copy of the August 29, 2014 Order is attached as **Exhibit G**.[4]  On information and belief, Fawkes has set aside Hansen's election petition which was on file at the time of the date of both the Supreme and Superior Court orders and, therefore, complied with Judge Brady's order. The Superior Court proceeding has now terminated and is moot.

---

[3] The order appears to exceed the scope of the V.I. Supreme Court's order and mandate that the merely the "papers be set aside."

[4] Plaintiff believes that the order is a void, non-judicial act and an improper advisory opinion because judging the qualifications of persons to be or who are members of the Legislature is solely a legislative act and the territorial courts in this case acted without jurisdiction and in contravention of the limitations Congress placed on them under ROA §6(g), 48 U.S.C. § 1572(g).  Senator Hansen intends to ask the Supreme Court of the United States to set this order aside on this basis and also on the merits, so there is, independently, an issue of the finality of this ruling.  Senator Hansen has ninety days to petition for a writ of *certiorari*.

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 4

     5.     On September 3, 2014, the Governor of the Virgin Islands—using the unlimited Pardon powers granted him by Congress under the Revised Organic Act, 48 U.S.C. § 1591—issued Senator Hansen a full Pardon which removes any ROA § 6(b)-qualification-bar identified by the V.I. Supreme Court that would preclude Senator Hansen from running for election in this cycle.   A true and correct copy of the Pardon and the Governor's official statement on his exercise of his pardon power is attached as **Exhibit H** and **Exhibit I**, respectively.   The Governor correctly believes that the right to vote is a paramount right, and he exercised his absolute discretion under the ROA for the express purpose of recognizing the voters' right to choose in Senator Hansen as their representative.   By statute, and under the First Amendment, Equal Protection, and Due Process Clauses to the United States Constitution, Hansen has a right to cure any alleged defect in her petition, which she has done by obtaining a Pardon and by re-filing her election papers.   (**Ex. A**); *see also* 18 V.I.C. § 411.   Thus, as a matter of law, Senator Hansen's current and previous election petitions are valid because the legal effects of Senator Hansen's convictions have been "wiped out."   *See Noonan*, 906 F.2d at 959.   Senator Hansen seeks a declaration that neither the courts nor the legislature can interfere with the Governor's Pardon power under ROA, 48 U.S.C. § 1591; that the Governor's Pardon is not reviewable by the other, co-equal branches of government; and that neither branch may not take any action that interferes with his power to Pardon.   *See, e.g*., *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 485 (U.S. 1989) ("In a line of cases of equal weight and authority, however, where the Constitution by explicit text commits the power at issue to the exclusive control of the President, we have refused to tolerate any intrusion by the Legislative Branch. For example, the Constitution confers upon the President the "Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment."); *Schick v. Reed*, 419 U.S. 256, 266

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 5

(1974); ("the conclusion is inescapable that the pardoning power was intended to include the power to commute sentences on conditions which do not in themselves offend the Constitution, but which are not specifically provided for by statute," and that because "the pardoning power is an enumerated power of the Constitution," "its limitations, if any, must be found in the Constitution itself."; *United States v. Klein*, 80 U.S. 128, 147-148 (U.S. 1872); *see also Jackson v. Rose*, 223 Ky. 285, 288-289 (Ky. 1928) ("It is the duty of the court to discharge the defendant and dismiss the proceeding against him, since the pardon is itself an absolute exemption from any further legal proceedings which would tend to harass the defendant on account of the crime.").

6.      Since the Pardon, a minority political faction within the V.I. Joint Election Board is acting to keep Senator Hansen from the ballot for arbitrary and capricious reasons by making legally erroneous and malicious threats to the other members of the V.I. Joint Election Board for the sole purpose of interfering with the Governor's Pardon power and disenfranchising voters, in violation of the Voters' and Hansen's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution—made applicable to them through the ROA's Bill of Rights, ROA § 3, 48 U.S.C. § 1561—to vote for the candidate of their choice; to select a standard bearer; to free association; to equal protection under the law; to be free from arbitrary and irrational state action; and to substantive and procedural due process, will be irreparably violated.  No legitimate state interest will be served by keeping Senator Hansen from the ballot, and the decision to keep Senator Hansen from the ballot is being driven by political opponents who seek to dilute the right to vote and not for any rational, let alone compelling, state interest, and, if not enjoined, will amount to arbitrary and capricious state action.

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 6

7.     Plaintiff seeks a temporary, preliminary, and permanent injunction directing Caroline F. Fawkes and the Joint Election Board to place Senator Hansen on the upcoming election ballot, and a declaration that the Pardon issued by the Governor of the Virgin Islands is valid and removes any legal impediment to Senator Hansen running for re-election under Section 6(b) of the Revised Organic Act, and that, at minimum, the "legal effects of the conviction," have been "wiped out" by the Pardon, making Hansen's previous and current petition valid and rendering her eligible to run for re-election in November 2014 under the Revised Organic Act ("ROA") § 6(b), § 48 U.S.C. § 1572(b).  *See United States v. Noonan*, 906 F.2d 952, 959 (3d Cir. 1990).  Plaintiff has given Fawkes and the Joint Election Board proper, advance notice of this suit through the Attorney General's office.  Attorney General Vincent Frazier has received a copy of this Complaint and Emergency Request for TRO.

8.     The Attorney General of the Virgin Islands is of the Opinion that the Pardon requires that Fawkes and the Joint Board accept Senator Hansen's election Petition and place her on the ballot to comply with First Amendment rights of the Voters, the Governor's absolute Pardon power, and Hansen's Due-Process rights. (Opinion, **Exhibit L**.)  Nevertheless, despite Senator Hansen curing the putative ROA § 6(b) defect regarding her qualifications, and the broad Pardon power of the Governor and his demonstrated intent to allow Hansen to run in this cycle, either Fawkes or the Joint Election Board has refused accept Senator Hansen's new petition which she filed on September 4, 2014 or honor the old one, despite the Pardon, and is acting to bar Senator Hansen from appearing on the ballot out of confusion of the effect of the Pardon, which are likely because of legally erroneous contempt threats by Bryan's lawyer. Further, since the Pardon, Bryan has been quoted as saying "it ain't over until the fat lady sings." If Fawkes or the Joint Election Board is allowed to be manipulated by Bryan and his lawyer

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.,* CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 7

actions to keep Hansen from the ballot for arbitrary and discriminatory political reasons, the

Voters' and Hansen's rights under the First, Fifth, and Fourteenth Amendments to the United

States Constitution—made applicable to them through the ROA's Bill of Rights, ROA § 3, 48

U.S.C. § 1561—to vote for the candidate of their choice, to select a standard bearer, to free

association, to equal protection under the law; to be free from arbitrary and irrational state action,

and to substantive and procedural due process, will be irreparably violated.

      9.     This Court has federal-question jurisdiction under 28 U.S.C. § 1331, 1343, and 42

U.S.C. § 1983, because Plaintiff's claims involve the resolution of her rights under the United

States Constitution and the ROA (which is a federal statute passed by Congress and its

interpretation is a matter of federal law), and Fawkes and the Joint Election Board are acting

under color of territorial law in contravention of Plaintiff's federal rights to free association

expression and political speech; to equal protection under the law; to be free from arbitrary and

irrational state action; and to substantive and procedural due process. *See, e.g., Coffelt v.*

*Fawkes*, Slip Opinion 8, No. 14-3280, 3d Cir. Court of Appeals, issued Aug. 26, 2014.  The

Court also has jurisdiction under 28 U.S.C. § 1343(3), which authorizes an action to "redress the

deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any

right, privilege or immunity secured by the Constitution of the United States or by any Act of

Congress providing for equal rights of citizens or of all persons within the jurisdiction of the

United States," and 28 U.S.C. § 1343(4), which authorizes actions in federal court to "recover

damages or to secure equitable or other relief under any Act of Congress providing for the

protection of civil rights, including the right to vote."  The Court also has jurisdiction over the

matter under doctrine of "complete preemption" and the Supremacy Clause, because removing

Hansen from the ballot after she has been Pardoned is inconsistent with ROA § 6(b) and 6(g) and

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 8

preempted by federal law, and, thus, inconsistent with federal law, and it will impermissibly violate Plaintiff's due process rights and disenfranchise the Voters of the Virgin Islands from exercising their right to vote in contravention of a federal statute, *i.e.*, the ROA. *See, e.g., Planned Parenthood v. Sanchez*, 403 F.3d 324, 329-309 (5th Cir. 2005) (explaining that a "preemption" claim provides an independent basis for federal jurisdiction under 28 U.S.C. § 1331. The Court also has jurisdiction to declare the rights of the parties under the federal Declaratory Judgments Act, 28 U.S.C.S. § 2201, as this matter involves questions of the rights and duties of the parties under the United States Constitution and that ROA, which are both matters of federal law. Plaintiff asks this Court to issue a temporary, preliminary, and permanent injunction directing Fawkes and the V.I. Joint Election Board to place Senator Hansen on the upcoming ballot, and to also issue a declaration that the Pardon issued by the Governor of the Virgin Islands to Senator Hansen is valid and removes any impediment to Senator Hansen running for re-election in this election cycle under Section 6(b) of the Revised Organic Act; or from serving as a current V.I. Senator; or from running for re-election in this and in future elections based on the conviction at issue; and for any other relief that she shows herself entitled to.

## III. Facts

10. The material facts are undisputed and are mostly a matter of public record.

11. Senator Hansen is a current, sitting, ten-term member of the V.I. Legislature serving the people of St. Croix.[5] Senator Hansen has been certified and is on the ballot for re-

---

[5] http://en.wikipedia.org/wiki/Legislature_of_the_Virgin_Islands.

election for the November 4, 2014 election.[6]  Senator Hansen has been elected and has served as a member of the Legislature since after she was convicted on three counts of misdemeanor failure to file tax returns over five years ago.  Senator Hansen did not have her voting rights suspended as part of her conviction.

12.     Fawkes is the St. Croix Supervisor of Elections.  On May 14, 2014, she notified Bryan in writing that she had "completed the Examination of Nomination papers of Senator Alicia Senator Hansen pursuant to Virgin Islands Code, Title 18, Chapter 17, § 411 and our internal checklist."  "I have determined that she meets the qualifications established by law for public office as a senator."  Fawkes did so after requesting a legal opinion from the Attorney General's Office on Senator Hansen's eligibility to serve as a member of the legislature.

13.     On May 19, 2014, Bryan filed a pro se "Petition," in Superior Court, alleging he is an "adult resident of St. Croix, U.S. Virgin Islands, a voting member of the U.S. Virgin Islands, and a member of the St. Croix District Board of Elections."  Bryan "object[ed] to the nomination petition and papers of Alicia Hansen," and alleged that she is "ineligible to hold public office and prohibited from being a member of the Virgin Islands Legislature," because he claims Senator Hansen was previously convicted of the failure to "file taxes which constitutes a crime of moral turpitude."

14.     Bryan claimed Fawkes should have done more in vetting Senator Hansen, but he admits in his Petition that it is the "Legislature's duty to convene and determine whether Senator Hansen is qualified and eligible to remain a member of the Legislature."  Nevertheless, he argued that the courts should usurp this legislative function so that the "People of the Virgin

---

[6]http://www.vivote.gov/sites/default/files/FINAL%20(STX)%20Listing%20of%20Candidates%20(Election%202014)%207%2017%2014.pdf.

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 10

Islands [who have elected Senator Hansen 10 previous times] should not have to endure such a result when the Respondent can simply make the determination as to Hansen's ineligibility as required by law." Bryan sought to have the V.I. courts override the Voters and the Legislature to remove a political opponent.

15.     On June 3, 2014, Senator Hansen filed a Motion to Intervene and to Dismiss for Lack of Subject Matter Jurisdiction. Senator Hansen challenged the Superior Court's subject-matter jurisdiction; the justiciability of the question under the separation-of-powers doctrine and Bryan's standing to assert his claim; and the fact that the Bryan's complaint on its face failed to allege that Senator Hansen was convicted of a crime of moral turpitude as a matter of law.

16.     On July 2, 2014, Fawkes filed an Amended Motion to Dismiss under Rule 12(b)(6) for failure to state a claim. Fawkes argued that the plain text of 33 V.I.C. § 1524 does not prohibit persons convicted of misdemeanors from serving on the legislature and that the legislature itself has not designated the failure to file tax returns as a crime of moral turpitude. Fawkes also noted that the Election Board has failed to act pursuant to its authority to define "moral turpitude" or designate a conviction under 33 V.I.C. § 1524 as a crime constituting a crime of moral turpitude. Fawkes affirmatively represented that she performed her due diligence when she: (1) reviewed Senator Hansen's nomination papers; (2) reviewed the criminal case file associated with Senator Hansen's misdemeanor convictions; and when (3) she consulted with the U.S. Attorney's Office. After her review, "Fawkes concluded that Hansen met the qualifications established by law for public office as a senator."

17.     On July 29, 2014, the Superior Court granted Fawkes' Rule 12(b)(6) motion and denied Senator Hansen's motion to dismiss for lack of subject matter jurisdiction and dismissed the case with prejudice. The Superior Court determined that the term "moral turpitude" defies a

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 11

precise definition and that Bryan had failed to present any authority that the misdemeanor failure to file tax returns under 33 V.I.C § 1524 is such a crime.  The Superior Court also ruled that the crime for which Senator Hansen was convicted does not include an element by which the jury concluded that Senator Hansen committed fraud.  The Superior Court determined that Senator Hansen's fitness for office was better determined by the voters, and, ultimately, that the Legislature itself is the "sole judge of the elections and qualifications of its members" under § 6(g) of the Revised Organic Act.  The Superior Court assumed the truthfulness of Bryan's allegations under Rule 12(b)(6), but did not conduct any sort of evidentiary hearing.  Accordingly, the only evidence of the criminal record before the Superior Court were documents Bryan elected to attach to his Petition and there was not a complete evidentiary record before the V.I. Supreme Court on appeal.

18.     Bryan appealed to the V.I. Supreme Court, who heard the case on an expedited basis.  Hansen specifically objected to the Supreme Court hearing the merits of the action based on § 6(g) of the Revised Organic Act and the Separation of Powers Doctrine.  Both Hansen and Fawkes also argued the crime was not a crime of moral turpitude.

19.     On August 28, 2014, the V.I. Supreme Court disagreed that the limitations Congress placed on its judicial authority by ROA § 6(g) barred it from acting in this case (**Exhibit B**), and it ordered the Superior Court to "set aside" the election petition based solely on the putative ROA § 6(b) defect to Senator Hansen's qualifications.  (**Exhibits C** & **D**.)  The Supreme Court did not bar Senator Hansen from seeking a Pardon or from refilling her election papers once she did so.  Plaintiff also notes that, to the extent it is potentially relevant for purposes of either *res judicata* or collateral estoppel analysis, the V.I. Supreme Court expressly declined to rule on all the issues and defenses Senator Hansen raised as an intervenor:

We note that Hansen herself does not possess standing to challenge Bryan's standing. As we noted earlier, Hansen was not originally a party to the Superior Court proceedings; rather, she became involved in the litigation only after the Superior Court granted her motion to intervene pursuant to Federal Rule of Civil Procedure 24. We recognize that, in most cases, "[o]nce a court grants intervention . . . , the 'intervenor is treated as if [it] were an original party and has equal standing with the original parties.' " *In re Bayshore Ford Trucks Sales, Inc*., 471 F.3d 1233, 1246 (11th Cir. 2006) (quoting *Marcaida v. Rascoe*, 569 F.2d 828, 831 (5th Cir. 1978)). Nevertheless, an intervenor "may argue only the issues raised by the principal parties and may not enlarge those issues." *Southwestern Pa. Growth Alliance v. Browner*, 121 F.3d 106, 121 (3d Cir. 1997). This is because the United States Supreme Court has instructed that "an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." Thus, "[i]ntervenors . . . simply lack standing to expand the scope of the case to matters not [otherwise] addressed." Accordingly, courts have consistently held that an intervening defendant may not assert an affirmative defense that has been waived by the original defendant.[7]

20.     The Supreme Court determined that the current Legislature is not qualified to

Judge Senator Hansen's qualifications:

"The Virgin Islands Legislature is not a continuing body; it is a political branch of government whose members are elected to two-year terms, with the entire body standing for election in even-numbered years." *Garcia v. Garcia*, 59 V.I. 758, 775 (V.I. 2013). Thus, the current legislature—the 30th Legislature—is distinct from the 29th Legislature that preceded it, and the 31st Legislature that will succeed it. While the 30th Legislature is "the sole judge of the elections and qualifications of its members," it lacks the power to judge the qualifications of candidates for the 31st Legislature. Accord Richards v. Jones, 47 V.I. 197, 201 (V.I. Super. Ct. 2005) (holding, notwithstanding section 6(g), that the 25th Legislature "has no authority to impose punishment that exceeds its life") (citing Powell). And since the 31st Legislature will not come into existence until January 2015, *see* 48 U.S.C. § 1572(a), it, too, is presently without power to adjudicate the issue of Hansen's eligibility.  (**Ex. B**.)

21.     On August 29, 2014, Superior Court Judge Douglas A. Brady issued an

order to Fawkes, that, "the Supervisor of Elections shall set aside the nomination Papers

of Alicia 'Chucky' Hansen, and remove the name of Alicia 'Chucky' Hansen from the

---

[7] Ex. A at. 15-16 (footnotes omitted).

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 13

general election ballot."   A true and correct copy of the August 29, 2014 Order is attached as **Exhibit G**.  The order appears to exceed the scope of the Superior Court's mandate, as the V.I. Supreme Court did not order Judge Brady to order Fawkes to "remove the name of Alicia 'Chucky' Hansen from the ballot": it directed him only to "set aside the nomination papers" based solely on the defect due to the conviction; the V.I. Supreme Court's order didn't purport to bar Hansen from seeking and obtaining a pardon to cure the defect, not could it as a matter of federal law under expressly enumerated executive powers contained in ROA, 48 U.S.C. § 1591.

22.   On September 3, 2014, the Governor of the Virgin Islands issued Senator Hansen a full Pardon to preserve the voters of the Virgin Islands' right to vote for a standard bearer, which removes any ROA § 6(b) qualification-cloud identified by the V.I. Supreme Court that would preclude Senator Hansen from running for election in this cycle.  (**Exhibit H**.)  The Governor expressly stated in his press release that his intent was to preserve the Voter's right to choose in the upcoming election.  (**Exhibit M**.)

23.   According to Lisa Moorhead, a member of the Board of Elections, the ballots have to be approved by the Joint Election Board.  The Joint Election Board met on September 4, 2014, and based on a call received by Attorney Rohn on September 4, 2014 from Assistant Attorney General Kimberly Salisbury, acting as Counsel for the Board of Elections, Fawkes has officially stated she is disregarding the Attorney General's legal opinion and refusing to include Senator Hansen on the ballot, due to threats made by Bryan's attorney, Emile Henderson that she will be held in contempt of court and her misunderstanding of a Pardon.  (Rohn Declaration, **Exhibit I**.)  The Joint Election Board failed to require her to place Hansen on the ballot.  (Rohn Declaration, **Exhibit I**.)  The date the ballots have to be mailed out is not until September 20th

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 14

and, upon information, don't have to be printed until 2 days before that date but Fawkes and

Bryan are purposefully rushing to print the ballots in order to disenfranchise voters.

Additionally, it is not unusual to reprint ballots as this happened in the primary; the ballots just

have to abide by federal law in that they have to be mailed out to servicemen overseas 45 days

before election and there are actually only three such ballots.  (Rohn Declaration, **Exhibit I**.)

Assistant Attorney General Kimberly Salisbury informed Attorney Rohn that Fawkes and Bryan

are improperly attempting to send the ballots to the printer on September 10, 2014 even though

the Joint Board is not meeting until September 11 or 12, 2014 to even review the ballot. The sole

purpose of this rushed and improper act is to thwart the Governor's pardon power and

disenfranchise voters and amounts to, intentional, arbitrary, and discriminatory state action.

24.    In the 2010 election there was only a 15-vote difference between Senator Hansen

and the highest vote recipient for Senator on St. Croix.   In the 2012 election, she received the

highest vote with a full 240 votes separating her from the second highest vote recipient.  A true

and correct copy of the certified election results for 2010 and 2012 are attached hereto as,

**Exhibits J** and **Exhibit K**, respectively.

### IV.    Claims

25.    42 U.S.C. § 1983 authorizes this Court to issue an injunction to prevent Fawkes

and the Board of Elections from improperly removing a candidate from the ballot when doing so

would violate the Constitutional rights of either the candidate or the individual who signed the

nomination papers as a qualified elector.  *See, e.g., Coffelt v. Fawkes*, Slip Opinion 8, No. 14-

3280, 3d Cir. Court of Appeals, issued Aug. 26, 2014 (granting an injunction in favor of

Appellants and against Fawkes); Principle Brief of Soraya Diase Coffelt, John Canegata, and

Ronald Charles at 7, filed Jul. 17, 2014, ECF Doc. 003111683253, 3d Cir. Case No. 14-3280

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 15

(record established that Coffelt filed a nomination paper with the Office of Supervisor of Elections seeking to run for Governor with Canegata as her running mate; Canegata filed a nomination paper to run as Lieutenant Governor on the same ticket as Coffelt; and Charles is a resident of St. Croix, Virgin Islands and who was one of the individuals who signed the nomination paper as a qualified elector).

26.     "The right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively . . . rank among our most precious freedoms." *See Williams v. Rhodes*, 393 U.S. 23, 30 (1968) (holding that these fundamental rights are protected by the First Amendment right to free association, the Equal Protection Clause, and the Due Process Clause). "[W]e have said with reference to the right to vote: 'No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.'" *See id.* (citing *Wesberry v. Sanders*, 376 U.S. 1 (1964)). "The right to vote derives from the right of association that is at the core of the First Amendment, protected from state infringement by the Fourteenth Amendment." *See Storer v. Brown*, 415 U.S. 724, 756 (1974) (Brennan J. dissenting); *see also NAACP v. Button*, 371 U.S. 415, 430 (1963) (freedom of political association is a core value); *Bates v. Little Rock*, 361 U.S. 516, 522-523 (1960) ("Freedoms such as [the right to associate] are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference."); *NAACP v. Alabama*, 357 U.S. 449, 460-461 (1958) ("state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny"). "Had the intent of the Framers emerged from these materials with less clarity, we would nevertheless have been compelled to resolve any ambiguity in favor of a narrow

construction of the scope of Congress' power to exclude members-elect.  A fundamental principle of our representative democracy is, in Hamilton's words, 'that the people should choose whom they please to govern them.' 2 Elliot's Debates 257. As Madison pointed out at the Convention, this principle is undermined as much by limiting whom the people can select as by limiting the franchise itself." *See Powell v. McCormack*, 395 U.S. 486, 546-48 (1969) (and noting that constitutional "qualification" requirements must be strictly construed to avoid disenfranchising voters: "At the root of all these cases, however, is the basic integrity of the electoral process. Today we proclaim the constitutional principle of 'one man, one vote.' When that principle is followed and the electors choose a person who is repulsive to the Establishment in Congress, by what constitutional authority can that group of electors be disenfranchised?") Voters right to vote for the candidate of their choice and the right set forth in 18 V.I.C. § 381 to select a standard bearer is a fundamental right, and they have the right to challenge government action that burden's their right to vote for the candidate of their choice, subject to strict scrutiny and the burden on the government to show that the burden meets a compelling state interest. *See, e.g., Storer*, 415 U.S. at 756; *see also Patriot Party v. Allegheny County*, 95 F.3d 253 (3d Cir. 1996).

27.     The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.  *See, e.g., Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665, 16 L. Ed. 2d 169, 86 S. Ct. 1079 (1966) ("Once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment").  "The right of suffrage can be denied by a debasement or dilution of

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 17

the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the

franchise." *See Reynolds v. Sims*, 377 U.S. 533, 555 (1964). The U.S. Supreme Court

consistently and broadly protects suffrage:

> A consistent line of decisions by this Court in cases involving attempts to deny or
> restrict the right of suffrage has made this indelibly clear. It has been repeatedly
> recognized that all qualified voters have a constitutionally protected right to vote,
> *Ex parte Yarbrough,* 110 U.S. 651, and to have their votes counted, *United States
> v. Mosley*, 238 U.S. 383. In Mosley the Court stated that it is "as equally
> unquestionable that the right to have one's vote counted is as open to protection . .
> . as the right to put a ballot in a box." 238 U.S., at 386. The right to vote can
> neither be denied outright, *Guinn v. United States*, 238 U.S. 347, *Lane v. Wilson*,
> 307 U.S. 268, nor destroyed by alteration of ballots, *see United States v. Classic*,
> 313 U.S. 299, 315, nor diluted by ballot-box stuffing, *Ex parte Siebold*, 100 U.S.
> 371, *United States v. Saylor*, 322 U.S. 385. As the Court stated in Classic,
> "Obviously included within the right to choose, secured by the Constitution, is the
> right of qualified voters within a state to cast their ballots and have them counted .
> . . ." 313 U.S., at 315. Racially based gerrymandering, *Gomillion v. Lightfoot*, 364
> U.S. 339, and the conducting of white primaries, *Nixon v. Herndon*, 273 U.S. 536,
> *Nixon v. Condon*, 286 U.S. 73, *Smith v. Allwright*, 321 U.S. 649, *Terry v. Adams*,
> 345 U.S. 461, both of which result in denying to some citizens their right to vote,
> have been held to be constitutionally impermissible. And history has seen a
> continuing expansion of the scope of the right of suffrage in this country. The
> right to vote freely for the candidate of one's choice is of the essence of a
> democratic society, and any restrictions on that right strike at the heart of
> representative government. And the right of suffrage can be denied by a
> debasement or dilution of the weight of a citizen's vote just as effectively as by
> wholly prohibiting the free exercise of the franchise.[8]

28.   Moreover, the right to vote and associate implicates First Amendment,

Equal Protection and substantive and procedural Due-Process rights. "The rights of

voters and the rights of candidates do not lend themselves to neat separation; laws that

affect candidates always have at least some theoretical, correlative effect on voters." *See*

*Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (citing Bullock v. Carter, 405 U.S.

134, 143 (1972)). "Our primary concern is with the tendency of ballot access restrictions

---

[8] *See Reynolds*, 377 U.S. at 555-56.

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER
Page 18

'to limit the field of candidates from which voters might choose.' Therefore, '[in]

approaching candidate restrictions, it is essential to examine in a realistic light the extent

and nature of their impact on voters.'" *See id.* Thus, "the impact of candidate eligibility

requirements on voters implicates basic constitutional rights. Writing for a unanimous

Court in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958), Justice Harlan

stated that it 'is beyond debate that freedom to engage in association for the advancement

of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process

Clause of the Fourteenth Amendment, which embraces freedom of speech." *See id.* A

state' election code has to be both "generally applicable" and applied "even handedly" to

withstand scrutiny to survive a constitutional challenge when it dilutes the right to vote.

*See id.* A claim under § 1983 will also lie where state or local election infractions work a

denial of substantive or procedural Due Process rights in violation of the Fourteenth

Amendment. *See, e.g., Bush v. Gore,* 531 U.S. 98, 104-05 (2000) ("The right to vote is

protected in more than the initial allocation of the franchise. Equal protection applies as

well to the manner of its exercise. Having once granted the right to vote on equal terms,

the State may not, by later arbitrary and disparate treatment, value one person's vote over

that of another."); *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001) ("In

those few cases in which organic failures in a state or local election process threaten to

work patent and fundamental unfairness, a colorable claim lies for a violation of

substantive due process"); *Duncan v. Poythress*, 657 F.2d 691, 700 (5th Cir. 1981)

(holding that "the due process clause of the fourteenth amendment prohibits action by

state officials which seriously undermine the fundamental fairness of the electoral

process"); *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978) ("If the election process

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 19

itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order."); *see also Marks v. Stinson*, 19 F.3d 873, 889 (3d Cir. 1994) (enjoining winning state senate candidate from exercising official authority where absentee ballots were obtained and cast illegally).

29.     Removing Senator Hansen from the ballot or refusing to place her on the ballot will by definition burden the Voters' right to vote for the candidate of their choice and to select a standard bearer and will disenfranchise the St. Croix voters who have relied on Senator Hansen to act as their representative for 10 previous terms in violation of their rights to free association, free expression, equal protection, and substantive and procedural due process.  It will also impair Senator Hansen's rights to free association; to equal protection under the law; to be free from arbitrary and irrational state action; and to substantive and procedural due process, will be irreparably violated.  No legitimate state interest will be served by keeping Senator Hansen from the ballot, and the decision to keep Senator Hansen from the ballot is being driven by political opponents who seek to dilute the right to vote and not for any rational, let alone compelling, state interest, and, if not enjoined, will amount to arbitrary and capricious state action.  Plaintiff seeks a temporary, preliminary, and permanent injunction directing Caroline F. Fawkes and the Joint Election Board to place Senator Hansen on the upcoming election ballot, and a declaration that the Pardon issued by the Governor of the Virgin Islands is valid and removes any legal impediment to Senator Hansen running for re-election under Section 6(b) of the Revised Organic Act, and that, at minimum, the "legal effects of the conviction," have been "wiped out" by the Pardon, making Hansen's previous and

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 20

current petition valid and rendering her eligible to run for re-election in November 2014

under the Revised Organic Act ("ROA") § 6(b), § 48 U.S.C. § 1572(b).  Absent an

injunction, the proper political process will not determine the will of the Voters—*i.e.*,

through an election—despite the Governor's Pardon so that Senator Hansen's name

appear on the ballot.  If Fawkes or the Joint Election Board is allowed to act to keep

Hansen from the ballot, the Voters' and Hansen's rights under the First, Fifth, and

Fourteenth Amendments to the United States Constitution—made applicable to them

through the ROA's Bill of Rights, ROA § 3, 48 U.S.C. § 1561.

30.     This action is not barred by the doctrines of claim or issue preclusion, as

Plaintiff's current action is based on new, subsequent events that occurred after the territorial-

court suit concluded, including the full Pardon the Governor issued for Senator Hansen.  *See,*

*e.g., Cacciamani & Rover Corp. v. Banco Popular*, Slip Opinion, V.I. Sup. Ct. No. 2013-63,

issued Aug. 29, 2014; *see also Smith v. Turnbull*, 54 V.I. 369, 375 (V.I. 2010) ("To bind parties

to a subsequent action to the outcome of a prior judgment pursuant to the principle of res

judicata, courts require that: (1) the prior judgment was valid, final, and on the merits; (2) the

parties in the subsequent action are identical to or in privity with the parties in the prior action;

and (3) the claims in the subsequent action arise out of the same transaction or occurrence as the

prior claims.").  Moreover, neither the V.I. Supreme Court nor the V.I. Superior Court held a

hearing; took evidence presented from Senator Hansen or Fawkes; considered public comment;

or heard argument representing the interests of the public and V.I. voters in general before it

made its decision, and Senator Hansen was precluded from raising all of her relevant defenses,

which is likely why the Governor stepped in and issued a Pardon.  In short, the Governor's

Pardon and its effect on Hansen's ability to run and Senator Hansen's new filed petition are new

issues and were not the subject of the V.I. Supreme Court's Memorandum Opinion or the Superior Court's subsequent Order.  Plaintiff seeks a declaration that the Governor's Pardon of Senator Hansen was a valid exercise of his authority granted by Congress under ROA § 6(b), 48 U.S.C. § 1572(b), and that it cured any alleged qualification bar for her to run in this and future election cycles.

## V.    Preliminary Injunction/Permanent Injunction/Rule 65

31.    Federal Rule of Civil Procedure 65 authorizes a court to issue a preliminary injunction: (1) Contents. Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.  *See* FED. R. CIV. P. 65(d)(1).  Plaintiff seeks an order directed to Fawkes and the Joint Election Board to place Senator Hansen's name on the ballot because failing to place Senator Hansen's name on the ballot would violate her First Amendment and Due Process rights and violate the rights of those voters who intend to vote for her as the candidate of their choice and their standard bearer in light of the Governor's Pardon.  Plaintiff requests that the Court serve the order on Fawkes and the Joint Election Board and the Attorney General so that Fawkes and the Joint Election Board and their agents will be bound by the order.  *See* FED. R. CIV. P. 65(d)(2). No legitimate state interest is at stake preventing her from being on the ballot in light of the Pardon, and failing to place her on the ballot would interfere with the Governor's Pardon power and amount to arbitrary and capricious state action.

32.    Courts consider four factors when ruling on a request for a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary

relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.  *See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012); *Coffelt v. Fawkes*, No. 2014-25, 2014 U.S. Dist. LEXIS 94807, at *4-6 (D.V.I. Jul. 12, 2014); *see also Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 182 (3d Cir. 2006); *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001); *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 nn.2-3 (3d Cir. 1996)).

1.       **Plaintiffs have a reasonable probability of success on the merits**

33.       The Constitution grants Congress the authority to "make all needful rules and regulations respecting the territory or other property belonging to the United States."  *See* U.S. Const. art. IV, § 3, cl. 2.  Pursuant to that authority, Congress passed the ROA, 48 U.S.C. §§ 1541 *et seq.*, which "serves as the Constitution of the Virgin Islands."  *See Kendall v. Russell*, 572 F.3d 126, 135-36 (3d Cir. 2008); *Brow v. Farrelly*, 994 F.2d 1027, 1032 (3d Cir. 1993). "The Government of a State does not derive its powers from the United States, while the Government of [a Territory] owes its existence wholly to the United States. . . . The jurisdiction and authority of the United States over that [T]erritory and its inhabitants, for all legitimate purposes of government, is paramount."  *See Grafton v. United States*, 206 U.S. 333, 354 (1907). Congress has "entire dominion and sovereignty" and "full legislative power" over the Territories. *Simms v. Simms*, 175 U.S. 162, 168 (1899); *see also Binns v. United States*, 194 U.S. 486, 491 (1904); *Late Corp. of Church of Jesus Christ of Latter-day Saints v. United States*, 136 U.S. 1, 42-43, 45 (1890).  "[Congress] may make a void Act of the territorial government valid, and a valid Act void.  In other words, it has full and complete legislative authority over the People of the Territories and all the departments of the territorial governments."  *See National Bank v. County of Yankton*, 101 U.S. 129, 133 (1880); *see also Sere v. Pitot,* 6 Cranch 332, 336-337

(1810); *American Ins. Co. v. 356 Bales of Cotton*, 1 Pet. 511, 542-543 (1828). Whatever limits

the Constitution imposes on the exercise of federal power in the territories, the right to define the

jurisdiction and separate powers of the executive, the legislature, and its local courts is not one of

them. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 268-269 (1990) (discussing the

Insular Cases).

      34.     The ROA divides the power to govern the territory between a legislative branch,

48 U.S.C. § 1571, an executive branch, id. § 1591, and a judicial branch, id. § 1611.  By its

organizational structure, Congress "implicitly incorporated the principle of separation of powers

into the law of the territory." *See Kendall*, 572 F.3d at 135-36.  In *Springer v. Philippine Islands*,

277 U.S. 189 (1928), the Supreme Court reviewed the Philippine Organic Act and noted how

that act embedded the separation of powers in the territorial government of the Philippines. *See

id*. at 199-202.  The Court then articulated the practical effect of the separation of powers

principle:  "It may be stated then, as a general rule inherent in the American constitutional

system, that, unless otherwise expressly provided or incidental to the powers conferred, the

Legislature cannot exercise either executive or judicial power; the executive cannot exercise

either legislative or judicial power; the judiciary cannot exercise either executive or legislative

power." *See id*.  Thus, the separation-of-powers doctrine prohibits any branch of government

from exercising powers that are reserved for the other branches, unless such an exercise is

"expressly provided or incidental to the powers" that a branch necessarily has.  *See Kendall*, 572

F.3d at 135-36 (determining that the language of the ROA granting the judicial branch the power

to regulate its own conduct prohibited the legislature from removing judges from office, which is

"fundamentally a judicial power").

35.     The Voters' right to vote for the candidate of their choice and the right set forth in 18 V.I.C. § 381 to select a standard bearer is a fundamental right, and they have the right to challenge government action that burden's their right to vote for the candidate of their choice, subject to strict scrutiny and the burden on the government to show that the burden meets a compelling state interest.  *See, e.g., Storer*, 415 U.S. at 756; *Patriot Party*, 95 F.3d at 257-59. The Voter's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution are made applicable to them through the ROA's Bill of Rights, ROA § 3, 48 U.S.C. § 1561, which also creates independent rights for them as a matter of federal statute, and Senator Hansen's rights are closely intertwined with the rights of the Voters in this case. *See, e.g., Reynolds*, 377 U.S. at 555-56.

36.     The Governor's Pardon cured any putative defect Senator Hansen had under ROA § 6(b), and the local authorities have no legitimate or compelling territorial interest in disenfranchising the Voters by keeping Senator Hansen off the ballot in this election cycle, and doing so will impermissibly interfere with the Governor's Congressionally authorized Pardon powers.

37.     The ROA specifically contemplates that a person who has either been convicted of a felony or a misdemeanor crime of moral turpitude may receive a Pardon from the governor, so that they may serve as a member of the Legislature.  It is evident from the clear and unambiguous language of the statute that Congress intended to preclude a prior conviction from being a complete bar to service in the Legislature.  *See* 48 U.S.C. § 1572(b).  Succinctly put, Congress contemplated that there are those who should be able to serve despite their past convictions and gave the Governor the authority to Pardon.

38.     Specifically, the ROA, 48 U.S.C. § 1591, grants the Governor the unlimited discretion and authority to grant pardons and reprieves.  The Governor may "grant pardons and reprieves and remit fines and forfeitures for offenses against local laws."  *See* 48 U.S.C. § 1591. While Senator Hansen was sentenced in federal court, it was because the original charges brought against her included federal offenses, but she was actually only convicted of misdemeanor failure to file a tax return under 33 V.I.C. § 1524, which is a misdemeanor made a crime by the V.I. Legislature and a matter of local law.

39.     In contrast, the President of the United States has no authority to pardon in this matter.  The President's pardon power derives from Article II, § 2 of the U.S. Constitution, which limits the President's pardon power to only those offenses against the United States.  *See* U.S. Const. art. II, sec. 2.  Since the ROA states that a person may receive a pardon that restores their civil rights, this power, therefore, is vested in the V.I. Governor's office and he has the absolute legal ability to pardon Senator Hansen.  Thus, even though Senator Hansen was tried and sentenced by a federal court, her conviction was an offense against local law and not an offense against the United States.  The pardon power is based on the offense, not the court the matter was tried or sentenced.  *See, e.g., Harbison v. Bell*, 556 U.S. 180, 186-87 (2009).

40.     Moreover, the V.I. Supreme Court is an Article IV federal court that, while becoming independent in matters of local law, remains subordinate to the District Court and the Third Circuit on matters of interpretation of federal law.  *See, e.g., Seafarers International Union v. Gov't of the V.I.*, 2014 U.S. App. LEXIS 16301, at *23-49 (3d Cir. Aug. 25, 2014); *Kendall v. Daily News Publ. Co*., 716 F.3d 82, 86-90 (3d Cir. 2013); *Defoe v. Phillip*, 702 F.3d 735, 738-40 (3d Cir. 2012); *see also Moravian Sch. Advisory Bd. v. Rawlins*, 70 F.3d 270, 285 (3d Cir. 1995) (under 48 U.S.C. § 1574(c), the Virgin Islands legislature may not amend or repeal local laws so

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 26

as to be inconsistent with Revised Organic Act or laws of the United States applicable to Virgin

Islands).   On page 25 and 26 of the V.I. Supreme Court's opinion, it expressly held that ROA

§ 6(b) qualifications are Congressionally mandated as a matter of federal law and may not be

altered by local law.   Thus, this Court may properly exercise federal jurisdiction and determine

the rights and duties of the parties and the effect of the Pardon under federal law, and should not

assume that any issues of comity or deference to the V.I. Supreme Court provide any basis to

abstain from hearing any question presented herein, especially since this dispute arguably

involves tension between co-equal local branches of government.   This Court is in the best

position to neutrally judge the scope of the Governor's pardon powers of the respective co-equal

branches of government that Congress intended, based on the plain language of the ROA.

41.      Determining whether a particular case arises under federal—versus local—law

turns on the "well-pleaded complaint" rule,[9] which provides that federal jurisdiction exists when

a federal question is presented on the face of the plaintiff's complaint.[10]  Thus, a district court's

federal-question jurisdiction extends over "those cases in which a well-pleaded complaint

establishes either that federal law [either] creates the cause of action or that ***the plaintiff's right***

***to relief necessarily depends on resolution of a substantial question of federal law***," in that

"***federal law is a necessary element of one of the well-pleaded . . . claims***."[11]

42.      In determining whether Congress intended for the Governor to have pardon power

that would permit Senator Hansen to run for office "can be derived only from the words

---

[9] *See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9-10 (1983); *Taylor v. Anderson*, 234 U.S. 74, 75-76, 58 (1914).

[10] *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Gully v. First National Bank*, 299 U.S. 109, 112-113 (1936).

[11] *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988).

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 27

[Congress has] have used; and [the court] cannot speculate beyond the reasonable import of these words." *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528-29 (2013) (citing *Sebelius v. Cloer*, 133 S. Ct. 1886 (2013)).  It is clear that the Governor acted within his authority in this case and that no ROA § 6(b) bar exists to allowing Hansen to run for office.

43.    The All Writs Act states in relevant part: (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.  *See* 28 U.S.C. § 1651 (1987).  The District Court of the Virgin Islands was established by an act of Congress, 48 U.S.C. § 1611, and thus the All Writs Act is applicable.  *See Gov't Guar. Fund of Fin. v. Hyatt Corp.*, 955 F. Supp. 441, 464-65 (D.V.I. 1997).

44.    Moreover, the anti-injunction act does not prohibit a federal court from enjoining an official like an election commissioner from taking unconstitutional or unlawful action or even enjoining an actual a state court that is engaging in a legislative—as opposed to a judicial—function in the context on an election dispute.  *See Roudebush*, 405 U.S. at 20-22.

45.    Additionally, suits to enjoin official state action that violate federal law are permissible and authorized by the Supremacy Clause, even absent an express cause of action, when the action is prohibited, preempted, or mandated by federal law.  *See, e.g., Verizon Maryland Inc. v. Public Service Commission*, 535 U.S. 635, 645 (2002); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, (1983); *Ex parte Young*, 209 U.S. 123, 160-62 (1908); *Local Union No. 12004, USW v. Massachusetts*, 377 F.3d 64, 30-32 (1st Cir. 2004)

46.    Plaintiff's claims are not barred by the *Rooker-Feldman* doctrine, which states that "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 28

that the state judgment itself violates the loser's federal rights." *See Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994) (emphasis added). In this case, new events have rendered the V.I. Supreme Court judgment moot and this case arises in large part out of Senator Hansen's new election petition based on her Pardon, which was not at issue in the Supreme Court's Memorandum Opinion. In fact, the Supreme Court expressly based its decision on the fact that Senator Hansen had not received a Pardon. Plaintiff is expressly authorized to bring her suit in federal court and she could not have raised these issues in the territorial-court proceedings as an intervenor as she was bound by the scope of the issues framed by Bryan and Fawkes (as held by the V.I. Supreme Court) and these new events (the Pardon) happened after the Supreme Court issued its mandate to set aside Fawkes the original petition. *See General Atomic Co. v. Felter*, 434 U.S. 12, 204-05 (1977); *Donovan v. Dallas*, 377 U.S. 408, 413 (1964). The scope of the Pardon and its effect is also a question of federal law because it arises solely under the Revised Organic Act.

**2.      Plaintiff will be irreparably injured by denial of the relief.**

47.      The Voters and Senator Hansen will lose the right to exercise their fundamental rights if Senator Hansen is not on the ballot. Senator Hansen's supporters have been working on her campaign and expended time and money on the campaign and no time is left to select an alternate candidate who will represent their political interests in the upcoming election. The Supreme Court for the first time declared Senator Hansen ineligible after her petition was filed and Senator Hansen has a substantive and procedural due-process and statutory right under § 411 to cure any defects to her election petition within a reasonable time after a defect is first noticed.

**3.      Fawkes will not suffer any harm if the injunction issues.**

48.      Fawkes and the Joint Election Board will suffer no harm if Senator Hansen is on the ballot and the Voters right to choose will be preserved.  The Attorney General believes that Senator Hansen has a right to be on the ballot.

**4.      The public's interest is in preserving their right to vote for the candidate of their choice, preserving the status quo, and considering the important issues raised in this complaint in a reasoned manner.**

49.      The public interest in this case favors giving the Voters the right to be the judge of whether Senator Hansen should represent them in the upcoming election.  Senator Hansen was on the ballot for both the 2010 and 2012 elections. These elections took place after her convictions.  The certified results of these elections demonstrate that Senator Hansen received 8306 and 5461 votes respectively.  In the 2010 election there was only a 15-vote difference between her and the highest recipient for Senator on St. Croix.   In the 2012 election, she received the highest vote with a full 240 votes separating her from the second highest vote recipient.  (**Exs. J and K**).  Those who believe that Senator Hansen should not serve should take the message to the people and exercise their right to vote against her.  However, those who believe that Senator Hansen's past convictions are just that, past, and want her to serve in the 31st Legislature, can exercise their right to vote for her.  What should not occur is that the evidence of the votes in both the 2010 and 2012 elections be completely ignored and the Governor's Pardon power effectively set aside by not placing Senator Hansen on the ballot.  The public interest favors the principle of "One Man/Women, One Vote," which isn't just a slogan, it's a bedrock principle of democracy.  *See Powell*, 395 U.S. at 546-48.  No public interest will be served by keeping her off the ballot while these issues are being finally determined.

*HANSEN, ALICIA "CHUCKY" V. FAWKES, ET. AL.*, CIVIL NO. _____
**COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**
Page 30

## VI.    Conclusion and Prayer

50.    Plaintiff asks this Court to issue a temporary, preliminary, and permanent injunction directing Fawkes and the V.I. Joint Election Board to place Senator Alicia "Chucky" Hansen on the upcoming ballot, and to also issue a declaration that the Pardon issued by the Governor of the Virgin Islands to Senator Hansen is valid and removes any impediment to Senator Hansen running for re-election in this election cycle under Section 6(b) of the Revised Organic Act; or from serving as a current V.I. Senator; or from running for re-election in this and in future elections based on the conviction at issue; and for any other relief that they show themselves entitled to.

LEE J. ROHN AND ASSOCIATES, LLC
Attorneys for Plaintiff

DATED:  September 8, 2014                 BY:   */s/ Lee J. Rohn*
                                          Lee J. Rohn, Esq.
                                          VI Bar No. 52
                                          1101 King Street
                                          Christiansted, St. Croix
                                          U.S. Virgin Islands 00820
                                          Telephone: (340) 778-8855
                                          Fax: (340) 773-2954